**Hugh S. HUNT, Plaintiff-Appellant,**

v.

**John E. TOMLINSON and Jones, Wilson & Tomlinson, P.A., Defendants-Appellees.**

No. 85–8668.

United States Court of Appeals, Eleventh Circuit.

Sept. 16, 1986.

Rehearing and Rehearing En Banc Denied Oct. 31, 1986.

Hugh S. Hunt, pro se.

Bruce H. Beerman, Atlanta, Ga., for defendants-appellees.

Before RONEY, Chief Judge, CLARK, Circuit Judge, and GIBSON,* Senior Circuit Judge.

PER CURIAM:

Hugh S. Hunt, formerly known as H.R. Lee, brought this action for legal malpractice pursuant to O.C.G.A. § 15–19–17 against his former attorney John E. Tomlinson and Tomlinson's law firm in the United States District Court for the Northern District of Georgia. Following trial without a jury, that court entered judgment for the defendants. We affirm.

## BACKGROUND

The genesis of this malpractice suit lies in a state court suit filed in the Superior Court of Fulton County, Georgia in 1976 by Jerry L. Collins, who sued H.R. Lee (now the appellant in this federal action under his new appellation, Hugh S. Hunt) for

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa- tion.

breach of a land option contract. The basis for that suit was an option that Hunt had granted Collins to purchase certain property in Lumpkin County, Georgia at $680 per acre. The consideration for the granting of this option was that Collins was to assist Hunt in obtaining a loan on the property from the Federal Land Bank. Hunt later repudiated the option for several reasons. The state trial court found no merit to any of the reasons presented by Hunt for repudiating the option and granted judgment in Collins' favor.

Although Tomlinson eventually tried the state case for Hunt, up until shortly more than a month before trial, John Czyzewski, a Virginia lawyer who was Hunt's general counsel, had been lead lawyer in the case and was to try it. Tomlinson was merely the local counsel who was to sign the pleadings as a member of the Georgia bar, keep track of calendar settings, handle local contact with Collins' counsel, and render advice when requested on local court rules or Georgia law. Czyzewski prepared the pretrial order in the case after going over the case in some detail with Hunt and merely forwarded it to Tomlinson who filed it with the court. The district court specifically noted: "Hunt, in this case as in others, was very involved in the details of the case. He obtained two years of legal education ... and in the last ten years has been involved in thirty to forty law suits. In many, he represented himself." Record, Vol. I, Tab 43 at 5.

In the early part of November, 1976, Czyzewski quit working for Hunt, notified Tomlinson of this, and notified the Fulton County Superior Court that he was withdrawing from the Collins case. Czyzewski's withdrawal indicated that all papers regarding the case were henceforth to be sent to Hunt. The district court noted that the state trial judge assumed from this that Hunt was thereafter lead counsel and would be assisted by Tomlinson.

Following the withdrawal of Czyzewski, Hunt asked Tomlinson to assume the role of lead counsel in the Collins case. Tomlinson, however, declined and asked Hunt to attempt to retain another attorney. Clearly understanding that Tomlinson did not wish to try the case, Hunt sought the services of other attorneys but was unable to obtain one. Finally, on or about December 14, 1976, Tomlinson wrote Hunt and reminded him that trial was set to begin on December 20. On December 17, 1976, Hunt called Tomlinson and told him that he had no other attorney. December 17 was a Friday. Realizing that Hunt could not obtain another lead counsel over the weekend prior to the Monday trial date, Tomlinson told Hunt that he would seek to obtain a continuance on Monday but that if he could not obtain one he would try the case. He told Hunt to bring the witnesses and the necessary documents with him from Virginia and requested that Hunt come to Atlanta from his Virginia home as soon as possible. Hunt stated that he would not or could not get to Atlanta until Sunday. When he arrived, he did not bring Czyzewski's file with him and could not provide Tomlinson with any information about the whereabouts of any of the several witnesses whom Hunt thought might be helpful on the issue of liability. The district court noted that Hunt did not have the funds to hire an expert witness with respect to the value of the land; for the same reason Collins had not been deposed. Over the weekend, Tomlinson had done no appreciable work on the case. It is clear from the record that Hunt's failure to bring Czyzewski's file to Atlanta, failure to arrive before Sunday, and failure to secure witnesses with respect to the value of the land [the only real issue tried, according to State Trial Judge Langford] were the chief contributing factors to lack of preparation for trial.

That Monday, Tomlinson moved for a continuance, but State Trial Judge Langford denied the continuance. Tomlinson then told the court that he was not prepared to try the case but proceeded to try it anyway. When he lost, Hunt filed this action in federal court for legal malpractice against Tomlinson and his law firm.

Hunt raises the following issues on appeal:

I. What was the burden of proof and what should be considered in addressing whether it had been met?

II. Was Tomlinson negligent in his treatment of the question of damages in the state action, and, if so, did this cause an economic loss to Hunt?

III. Was Tomlinson negligent in his treatment of the potential defense of impossibility in the state action, and, if so, did this cause a loss to Hunt?

IV. Was Tomlinson negligent in his treatment of the potential defense of illegality in the state action, and, if so, did this cause a loss to Hunt?

## DISCUSSION

### I.

■ The first major question addressed by the district court was: what is the nature of the facts that must be demonstrated by a client to establish a malpractice action against an attorney? Stated another way, must a client prove that he would have probably prevailed in his lawsuit and that the attorney's negligence was the causative factor in his failure to prevail? This is similar to the test applied in federal criminal habeas corpus cases. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Tomlinson contends that Hunt was required to prove that he would have prevailed in the original litigation but for any negligence of Tomlinson, or at least that he would have been subject to a substantially lower award of damages. Hunt argued, on the other hand, that a "might have" standard rather than a "would have" standard is proper. The district court held:

In the context of a legal malpractice action, the burden becomes one of showing that the judgment taken against the plaintiff resulted directly from the acts and omissions of the defendant. Phrased another way, if the plaintiff in the present case cannot show by a preponderance of the evidence that, had the

defendant taken the actions which the plaintiff alleges a reasonable and prudent lawyer would have taken, the judgment would not have been entered against the plaintiff, or would have been entered in a lesser amount, then the defendant must prevail. A "might have" standard would lead to speculation and conjecture. It is not enough that plaintiff establishes a breach of the duty owed by the lawyer; plaintiff must also demonstrate damage which resulted from the breach of the duty.

Record, Vol. I, Tab 43 at 18.

Hunt argues that Tomlinson's negligence was the proximate cause of both his loss in the state court and the amount of damages awarded against him there since there was no intervening cause. As a result, he claims not only that he has met his burden of proof, but also that the "would have" burden of proof employed by the district court was in error. Quite to the contrary, a reading of the Georgia cases of *McDow v. Dixon,* 138 Ga.App. 338, 226 S.E.2d 145 (1976), and *Hill Aircraft and Leasing Corp. v. Tyler,* 161 Ga.App. 267, 291 S.E.2d 6 (1982), reveals that the district court employed the proper burden of proof. Furthermore, although the district court did find negligence in the fact that Tomlinson, after entering the case as lead counsel on a Friday before a Monday trial, did not spend the entire weekend in the office preparing for the trial, the district court did properly find that Hunt did not bear his burden of showing that he would have prevailed or at least been assessed lesser damages in the state court action but for the negligence of Tomlinson—in other words, Hunt did not show that Tomlinson's negligence was the proximate cause of any harm he suffered.

Part of the evidence considered by the district court in determining whether or not Hunt had met this burden of proof was the testimony of the judge in the state court action, Judge Langford. On appeal, Hunt contends that the district court erred in considering the testimony of Judge Langford because "what Judge Langford might have done is not at issue, because any such

is in the realm of speculation and torts law excludes speculation. Nor is Judge Langford's own speculation years later as to what he might have done under different conditions with evidence he never heard determinative." Brief of Appellant at 29–30. During the presentation of Judge Langford's testimony before the district court, Hunt made no objections to its admissibility. As such, this court will not entertain this claim of error which Hunt now raises for the first time on appeal.

## II.

As to the question of whether Tomlinson was negligent in his treatment of the question of damages in the state action, and, if he was negligent, whether this caused a greater award of damages against Hunt, the district court held as follows:

All of the evidence on which Plaintiff in the present case relies in support of his contention that the judgment against him would have been less is evidence which was submitted to Judge Langford in Defendant Tomlinson's motion for a new trial. *See* Plaintiff's First Post-Trial Brief at 31. Judge Langford denied the motion for a new trial, having considered all of the evidence which the Plaintiff in the present case points to as support for his theory. In other words, even if the Defendant did breach a duty to the Plaintiff in failing to investigate prior to or during the trial the possibility of there having been different estimates of the value of the land in question, the Plaintiff has not met his burden of demonstrating that he was damaged as a result of this omission.

As the court suggested above, such evidence might have been useful to Mr. Tomlinson in his argument to Judge Langford for a continuance, in demonstrating that he needed extra time specifically to investigate the issue of damages. However, Plaintiff has put forward no evidence outside that which was submitted in support of the motion for a new trial which the defendant could have

found if he had obtained a continuance. The finder of fact in the state court considered all of the evidence which Plaintiff has pointed to as supportive of the proposition that the judgment was more than it would have been absent the Defendant's breach of duty, and nonetheless concluded the amount of the judgment was correct. There is no evidence from which this court could determine that the Plaintiff has met his burden of showing by a preponderance of the evidence damages as a direct result of the Defendant's omission in this area.

Record, Vol. I, Tab 43 at 19–20.

On appeal, Hunt argues that this holding of the district court is based upon a clear factual error in that no evidence was presented to Judge Langford in the motion for a new trial. This assertion of factual error by Hunt is clearly incorrect and is belied by Hunt's own post-trial brief to the district court. *See* Record, Vol. I, Tab 38, at 31 & Exh. E.

## III.

In addition to his argument that Tomlinson was negligent in his treatment of the question of damages in the state action, Hunt also argued to the district court that Tomlinson was negligent in his treatment of the potential defense of impossibility. The basis of this claim is the theory of legal impossibility of performance of the contract on which Hunt was sued in state court. Hunt states this impossibility defense as follows: "It is a requirement of the Federal Land Bank Association that all of its loans must be secured by a first lien on the interest in said real estate. Therefore, it would have been impossible for Hunt to have obtained a Federal Land Bank Loan on the property as long as there was an option contract filed of record against said property." Hunt is quite right about the fact that 12 U.S.C. § 2017 provides that a Federal Land Bank, in order to issue a loan on real estate, must be assured that it has the first lien on the property in question. His argument then is that because the Federal Land Bank could not and

would not have issued the loan to Hunt if it had known of the existence of the option contract, had Tomlinson made that known to the trial judge, performance would have been excused on the grounds of impossibility. However, as the district court noted in its order, "Judge Langford found as fact that both Collins and Hunt were aware that if the Land Bank knew of the option on the property, the loan would not be issued." Record, Vol. I, Tab 43 at 22. More importantly, the district court noted:

> [T]he performance called for by the contract was that Collins would "assist" Hunt in his efforts to obtain the loan from the Federal Land Bank, and in return Hunt would give Collins an option to purchase the land. Performance of neither of those things is made impossible by the existence of the statute on which plaintiff relies. Collins could still assist Hunt in endeavoring to obtain the loan. There has been no showing, in fact or in law, that Hunt could not have sold the land to Collins pursuant to the option. The fact that, as a matter of law, such sale would have made it impossible for him to actually receive the loan from the Federal Land Bank does not mean that it was impossible for him to perform. The contract in this case did not call for Collins to act as a guarantor that Hunt would receive the loan; it merely called for him to assist in the loan application process. This he did. Therefore, the contract was not impossible of performance, and, therefore, there has been no showing that the result in the trial court would have been different had Tomlinson placed more emphasis on arguing impossibility of performance.

Record, Vol. I, Tab 43 at 22–23.

Hunt's argument against this conclusion of the district court is that the contract in question called not for Collins to assist Hunt but rather for him to assure the attainment of the loan. The district court is correct as to the facts, however, as shown by the contract in this case. As the Court of Appeals of Georgia clearly stated with regard to this option contract in its appellate review of Judge Langford's decision, "[a] pre-trial order was entered by the judge which stated that it had been 'stipulated by counsel' that 'consideration for which agreement plaintiff was to help and assist in procuring a loan from the Federal Land Bank of Gainesville, Georgia on the property the subject matter of this action.'" *Prudential Timber & Farm Co. v. Collins,* 144 Ga.App. 849, 243 S.E.2d 80, 81 (1978).

### IV.

With regard to Hunt's argument that Tomlinson was negligent in failing to raise the defense of illegality of contract in the state action, the district court concluded that the standard of care imposed upon Tomlinson did not include development of new theories or defenses which did not appear in the pretrial order and, since illegality was not raised in the pretrial order in the state court, Tomlinson was not negligent in failing to prepare and present this theory given the fact that he had only a weekend to ready himself for this state trial.

On this issue of the defense of illegality, Hunt blithely ignores this conclusion of the district court and argues that Tomlinson's negligence here consisted in his failing to preserve this issue for appeal in the state system. We agree with the district court that the standard of care did not require Tomlinson to develop such a new defense at the last minute. Furthermore, we note that since the option contract merely required Collins to "assist" Hunt in his efforts to obtain the loan from the Federal Land Bank then the contract was not illegal in its strictest sense; for it was not illegal for Collins to assist Hunt in attempting to obtain the loan, and it was not illegal for Hunt to grant Collins an option on the land.

The appellant having failed to establish that his lawsuit would have been successful, or the damages less, but for the type or nature of the legal representation afforded by appellee, it follows that the district court committed no error.

AFFIRMED.